



## MEMORANDUM OPINION

No. 04-11-00839-CV

Joanna Lynn **TREVINO**,
Appellant

v.

**MC45 HOLDINGS, L.L.C. D/B/A RYKE PHYSICAL THERAPY
AND RYKE REHABILITATION LIMITED PARTNERSHIP**,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-07955
Honorable Renée F. McElhaney, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:    October 3, 2012

AFFIRMED

Joanna Trevino appeals the dismissal with prejudice of her lawsuit against MC45 Holdings, L.L.C. d/b/a Ryke Physical Therapy and Ryke Rehabilitation Limited Partnership (collectively, "Ryke") for failing to have served an expert report in compliance with the Texas Medical Liability Act (the "TMLA" or the "Act"). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001-.507 (West 2011 & Supp. 2012). We affirm the judgment of the trial court.

**ANALYSIS**

Trevino asserts nine issues, all complaining that her lawsuit does not fall under the Act or require an expert report because her claims are not health care liability claims asserted against a health care provider. Instead, she characterizes her suit as an ordinary negligence suit against a physical therapy center based on its negligent operation of the cervical traction unit she was using for treatment of her neck problems. In support of her argument, she notes that her injury arose out of the misuse or malfunction of the cervical traction machine by non-medical personnel at the Ryke facility, and at the time of her injury there were no medical doctors, osteopathic doctors, or any other health care providers on the premises or on the staff. She further argues that physical therapists are not listed as health care providers under the definition section of the Act. *Id.* § 74.001(a)(12)(A) (West Supp. 2012). Finally, Trevino contends her suit is not an inseparable part of health care services rendered and does not require the specialized knowledge of a medical expert. For all these reasons, Trevino contends her suit is not governed by the Act's requirement to serve an expert report; therefore, the trial court abused its discretion in dismissing her lawsuit.

**STANDARD OF REVIEW**

We generally review a trial court's order granting a motion to dismiss for failure to timely file a section 74.351(a) expert report under an abuse of discretion standard. *See Id.* § 74.351(a) (West 2011); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001); *Pedroza v. Toscano*, 293 S.W.3d 665, 666 (Tex. App.—San Antonio 2009, no pet.). However, when the issue presented requires a statutory interpretation or a determination of whether a claim falls under the Act, i.e., questions of law, we use a de novo standard of review. *Tex. West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012).

**DISTINGUISHING ORDINARY NEGLIGENCE FROM HEALTH CARE LIABILITY CLAIMS**

Recently, our Texas Supreme Court emphasized the need for a two-prong inquiry when distinguishing an ordinary negligence claim from a health care liability claim. The court noted that "the heart of these cases lies in the nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of the TMLA." *Id.* at 176. Therefore, we begin our analysis with the Act's definition of a health care liability claim:

> 'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West Supp. 2012). Based on this statutory definition, a health care liability claim contains three elements: (1) the suit must be against a physician or health care provider; (2) the claim or claims at issue must relate to treatment, lack of treatment, or another claimed departure from accepted standards of medical care, health care, or safety, or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant. *Id.*; *Williams*, 371 S.W.3d at 179-80.

### Is Ryke a Health Care Provider?

The first element at issue in this case is whether Ryke is a health care provider. Trevino argues that physical therapists are not listed under the definition of a health care provider in the Act and are, therefore, excluded. Trevino also cites two cases decided under the former medical liability act[1] holding that physical therapists are not health care providers. *See Henry v. Premier Healthstaff*, 22 S.W.3d 124, 127 (Tex. App.—Fort Worth 2000, no pet.) (because physical

---

[1] The Medical Liability and Insurance Improvement Act, codified at TEX. REV. CIV. STAT. ANN. art. 4590i.

therapists are not listed within the statute's definition of health care provider, they are not health care providers); *see also Terry v. Barrinuevo*, 961 S.W.2d 528, 531 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (same holding). Under the current Act, "health care provider" is defined in part as:

> any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, **including**: (i) a registered nurse; (ii) a dentist; (iii) a podiatrist; (iv) a pharmacist; (v) a chiropractor; (vi) an optometrist; (vii) a health care institution; or (viii) a health care collaborative certified under Chapter 848, Insurance Code.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A) (emphasis added). As Trevino correctly notes, physical therapists are not specifically listed among the seven providers. However, the current version of the Act also uses the word "including" preceding the list of various health care providers. The use of the word "including" is a term of enlargement and not of limitation. TEX. GOV'T CODE ANN. § 311.005(13) (West 2005); *Williams*, 371 S.W.3d at 179. Therefore, unlike the prior medical liability act, under the current version of the Act the list of health care providers is nonexclusive. *Williams*, 371 S.W.3d at 179. Simply because physical therapists are not included in the list no longer precludes them from qualifying as a health care provider under the Act.

In fact, as noted in the Act's definition, a "person, partnership, professional association, corporation, facility, or institution" can qualify as a health care provider if they are "duly licensed, certified, registered, or chartered by the State of Texas to provide health care." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A). In Texas, a person may not practice physical therapy unless the person is duly licensed by the Texas Board of Physical Therapy Examiners. *See* TEX. OCC. CODE ANN. § 453.201(a) (West 2012). The Occupation Code defines a "physical therapist" to mean "a person who is licensed by the board as a physical therapist and practices

physical therapy." *Id*. § 453.001(4) (West 2012). "Physical therapy" is defined to mean "*a form of health care* that prevents, identifies, corrects, or alleviates acute or prolonged movement dysfunction or pain of anatomic or physiologic origin." *Id*. § 453.001(6) (West 2012) (emphasis added). Thus, a physical therapist is someone licensed by the State to provide "a form of health care," which places a physical therapist within the Act's definition of a health care provider. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A). Similarly, a physical therapy facility must be registered, function under the direction of a physical therapist, and meet other licensing requirements established by the Texas Board of Physical Therapy. TEX. OCC. CODE ANN. § 453.213 (West 2012). The Occupation Code defines a "physical therapy facility" to mean "a physical site, including a building, office, or portable facility, where the practice of physical therapy takes place." *Id.* § 453.001(8) (West 2012). As noted, the practice of physical therapy is a form of health care; therefore, a physical therapy facility is a physical site where provision of a form of health care occurs. *Id.* § 453.001(6), (8). For these reasons, we reject Trevino's argument that Ryke is not a health care provider.

### *Character of Trevino's Claims*

The second element at issue in this case is whether Trevino's claims implicate one or more of the types of health care liability claims set out in the definition. In her pleadings, Trevino claims that after receiving 15 minutes of cervical traction therapy, Ryke's employees improperly released her from the unit "all at once, causing the cervical unit to 'snap suddenly,' which thereby caused [Trevino's] vertebrae to compress and slam down all together." She specifically pleads that Ryke and its employees failed to properly operate the cervical traction unit while she received treatment and failed to properly keep and maintain the cervical traction unit. The Act contemplates claims for "treatment" and "lack of treatment" and for alleged

"departure[s] from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." Ryke argues that Trevino's claims allege a departure from accepted standards that should have been performed or furnished by Ryke during her neck treatment and will require expert testimony to establish the applicable standard of care, breach, and causation. Trevino asserts her claims are not health care related but are based solely on the non-medical staff's misuse or malfunction of a machine.

The Act defines "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (West Supp. 2012); *Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 395 (Tex. 2011) ("'[H]ealth care' involves more than acts of physical care and medical diagnosis and treatment. It involves '*any* act performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's . . . confinement.'") (emphasis in the original). A claim alleges a departure from accepted standards of health care if the act or omission complained of is an inseparable or integral part of the rendition of health care. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848, 850 (Tex. 2005). Here, Trevino claims Ryke's employees failed to properly maintain or operate the cervical traction unit thereby causing her to be improperly released from the unit. All of her claims arise from acts or omissions surrounding the proper and safe use of the cervical traction unit during her neck treatment—not something within the common knowledge of a layman. *See Rehabilitative Care Sys. of Am. v. Davis*, 73 S.W.3d 233, 234 (Tex. 2002) (per curiam) (expert testimony was required to establish appropriate standard of care in suit against physical therapist for negligent supervision during a rehabilitative exercise program); *see also*

*Rubio*, 185 S.W.3d at 848 (necessity of expert testimony from health care professional to prove claim may also be factor in determining whether a cause of action is an inseparable part of the rendition of health care services). Furthermore, "training and staffing policies and supervision and protection of [patients] . . . are integral components of [a health care facility's] rendition of health care services . . . ." *Rubio*, 185 S.W.3d at 850. We conclude that Trevino's claims are health care claims against a health care provider; therefore, expert medical or health care testimony will be necessary to prove or refute the merits of Trevino's claims. *Williams*, 371 S.W.3d at 182.

Moreover*,* the Texas Supreme Court recently examined for the first time whether a claim under the "safety" prong of Chapter 74's health care liability claim definition must be "directly related to health care." *Id.* at 183. As noted by the court, "[t]he TMLA's HCLC definition includes, among the different types of covered claims, 'claimed departure[s] from accepted standards of . . . safety . . . .'" *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13)). The court ultimately concluded that a safety claim does not have to be directly related to the provision of health care*. Id.* at 186. Therefore, even if we accepted Trevino's argument that her suit is not an inseparable part of health care services, her claims are still based on departures from the accepted standards of safety when releasing her from the traction unit, and thus are still within the definition of a health care liability claim.

## CONCLUSION

Trevino claims that Ryke failed to properly operate, keep, and maintain the cervical traction unit resulting in her injury when she was improperly released from the unit after her cervical traction therapy. We conclude that Trevino's claims against Ryke are properly characterized as health care liability claims based on claimed departures from accepted standards

of health care and safety. Therefore, the trial court properly dismissed Trevino's claims for having failed to provide an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (b) (West 2011). We affirm the trial court's judgment.

Phylis J. Speedlin, Justice