# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0388
═══════════

PSYCHIATRIC SOLUTIONS, INC. AND MISSION VISTA BEHAVIORAL HEALTH SERVICES, INC. D/B/A MISSION VISTA BEHAVIORAL HEALTH CENTER, PETITIONERS,

v.

KENNETH PALIT, RESPONDENT.

═══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
═══════════════════════════════════════════════

JUSTICE BOYD, joined by JUSTICE LEHRMANN, concurring.

I agree with the Court's conclusion that Palit's claims are health care liability claims subject to the Texas Medical Liability Act (TMLA), and I agree with the Court's disposition of those claims, which is consistent with the Court's prior decision in *Texas West Oaks Hospital, L.P. v. Williams*, 371 S.W.3d 171 (Tex. 2012). I do not agree, however, with the *West Oaks* majority's broad construction of the "safety standards" component of the TMLA's definition of a "health care liability claim." Although this disagreement does not alter the proper disposition of this case, it relates to an important issue that I anticipate the Court will face again in future cases. I therefore concur in the Court's judgment, but write separately to express and explain the nature of my disagreement.

The Texas Legislature has defined a "health care liability claim" to mean "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or

administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Prior to 2003, this definition included only "claimed departure[s] from accepted standards of medical care, or health care, or safety"—that is, it did not include the language "or professional or administrative services directly related to health care." Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 TEX. GEN. LAWS 2039, 2041 (former TEX. REV. CIV. STAT. art. 4590i, § 1.03(a)(4)), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 TEX. GEN. LAWS 847, 884.

This Court has struggled to reach a consensus on the meaning of the word "safety," as used in both the prior and current versions of the statute. Under the prior version, a five-member majority of the Court first held that the Legislature's inclusion of the reference to "safety" standards "expands the scope of the statute beyond what it would be if it only covered medical and health care," and thus includes "[p]rofessional supervision, monitoring, and protection of the patient population." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005) (Wainwright, J., joined by Hecht, Medina, Johnson, and Willett, JJ., joined by Jefferson, C.J. as to Part III.B.3 ("Safety")). Chief Justice Jefferson joined the Court's discussion of "safety" and concluded in his concurring and dissenting opinion that the "statute's plain text" and "plain meaning" did not limit safety claims only to those that "involve health care" or "safety as it relates to the provision of health care." *Id.* at 860–61 (Jefferson, C.J., concurring in part and dissenting in part). Dissenting from the judgment, three Justices disagreed with Chief Justice Jefferson and agreed instead "with the Court" that the Act

2

encompassed "safety" claims only "when those claims are directly related to the provision of health care." *Id*. at 866 (O'Neill, J., dissenting, joined by Brister and Green, JJ.).

The Court addressed the prior version of the statute again in *Marks v. St. Luke's Episcopal Hospital*, 319 S.W.3d 658 (Tex. 2010). There, two members of the Court concluded that a cause of action alleging departures from accepted safety standards is a health care liability claim only if the safety standards are "an inseparable or integral part of the patient's care or treatment," and held that the plaintiff's claims did, in fact, involve "an integral and inseparable part of the health care services provided" to him. *Id*. at 664 (Medina, J., joined by Hecht, J.).[1] Four Justices disagreed that the plaintiff's claims involved an integral component of his treatment, but noted that the claims would have satisfied the broader construction of the "safety" that Chief Justice Jefferson advocated in *Diversicare*, which the Court had rejected. *Id*. at 675–76 (Jefferson, C.J., joined by Green, Guzman, and Lehrmann, JJ., concurring in part and dissenting in part). Two other Justices separately concurred and expressly agreed with Chief Justice Jefferson's broader construction of the "safety" component in *Diversicare*. *Id*. at 672–74 (Johnson, J., joined by Willett, J., concurring).[2] One Justice declined to join any of the others' constructions of "safety" because "it is not necessary in this case, as it was not in *Diversicare*, to define the precise scope of 'safety' under the [Act]." *Id*. at 667 (Wainwright, J., concurring).

---

[1] Justices Wainwright, Johnson, and Willett joined other parts of Justice Medina's opinion, including the disposition.

[2] Justices Hecht and Wainwright joined other parts of Justice Johnson's concurring opinion.

More recently, in *West Oaks*, the Court addressed the statute's current definition of a "health care liability claim," and a six-member majority held that "the safety component of [health care liability claims] need not be directly related to the provision of health care." *West Oaks*, 371 S.W.3d at 186. The Court concluded, *inter alia*, that the Legislature intended that the new phrase "directly related to health care" modify only the newly-added terms "professional or administrative services," and not the previously-existing term "safety." *Id.* at 185. The Court thus construed the statute to mean that any cause of action against a health care provider or physician claiming departure from accepted standards of "safety" is a health care liability claim, even if the safety standards are not "directly related to health care." *Id.* at 186. Three Justices dissented in *West Oaks*, concluding that, in adopting the 2003 amendments, the Legislature intended that the new phrase "directly related to health care" modify the term "safety" as well as the terms "professional or administrative services." *See id.* at 198–99 (Lehrmann, J., joined by Medina and Willett, JJ., dissenting). They read the statute to mean that a cause of action claiming departure from accepted standards of "safety" is a health care liability claim only if it "arise[s] from a breach of a health care provider's duty to adequately ensure a patient's safety in providing health care services." *Id*. at 198.

As in *West Oaks*, the current statutory definition of a "health care liability claim" governs this case. I agree with the Justices who dissented in that case. For three primary reasons, I conclude that the Legislature intended the phrase "directly related to health care" to modify the term "safety" as well as the terms "professional or administrative services," and thus claims asserting a departure from accepted safety standards are health care liability claims only if the safety standards are "directly related to health care."

4

First, I believe this construction is required in light of the statutory context and under the principle of ejusdem generis. *See Marks*, 319 S.W.3d at 663 (observing that "the principle of ejusdem generis warns against expansive interpretations of broad language that immediately follows narrow and specific terms, and counsels us to construe the broad in light of the narrow"). Even before the Legislature added the phrase "directly related to health care," some Justices on this Court concluded that, for this reason and others, the statute's reference to safety standards included only those standards related to patient care or treatment. *See Marks*, 319 S.W.3d at 663–64 (plurality op.); *Diversicare*, 185 S.W.3d 866 (O'Neill, J., joined by Brister and Green, JJ., dissenting). Several of these Justices concluded that the Legislature's later addition of the phrase "or professional or administrative services directly related to health care" after the term "safety" indicates the Legislature's agreement with the narrower construction of the term "safety." *See Diversicare*, 185 S.W.3d 867 (O'Neill, J., joined by Brister and Green, JJ., dissenting). Reading the statutory language in context, I agree that the most appropriate conclusion is that the Legislature added the phrase "directly related to health care" to modify the term "safety" as well as the terms "professional or administrative services."

Second, I believe we must attribute meaning to the Legislature's choice not to insert a comma after the word "safety" when it inserted the phrase "or professional or administrative services directly related to health care." Although I acknowledge the debate over usage of the Oxford or "serial" comma,[3] I necessarily attribute meaning to the lack of such usage in this instance. By inserting a

---

[3] *See Omaha Healthcare Ctr., L.L.C. v. Johnson*, 246 S.W.3d 278, 282 (Tex. App.—Texarkana 2008) (discussing use of serial comma and debate), *rev'd on other grounds* 344 S.W.3d 392 (Tex. 2011) and *abrogated by Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171 (Tex. 2012); *see also* Lynne Truss, EATS, SHOOTS & LEAVES: THE ZERO TOLERANCE APPROACH TO PUNCTUATION (Gotham 2004) ("There are people who embrace the Oxford comma, and

comma after "safety," the Legislature would have clearly indicated its intent to separate that term from the newly-added language, so that health care liability claims would include claims alleging a departure from accepted standards of:

1. medical care, or

2. health care, or

3. safety, or

4. professional or administrative services directly related to health care . . .

By choosing not to insert the comma, the Legislature instead tied the term "safety" to the new language, so that health care liability claims include claims alleging a departure from accepted standards of:

1. medical care, or

2. health care, or

3. safety or professional or administrative services directly related to health care . . .

In my view, we must read the Legislature's choice not to insert a comma after "safety" as an indication of its intent that "safety" be included with "professional or administrative services," and thus modified by the requirement that the claim be "directly related to health care."

Finally, as other Justices have noted, this construction is most consistent with the purposes of the TMLA. *See id.*; *Marks*, 319 S.W.3d at 663–64. The Legislature enacted the TMLA's predecessor statute in 1977 for the express purpose of relieving a "crisis [having] a material adverse effect on the delivery of medical and health care in Texas." *West Oaks*, 371 S.W.3d at 177 (quoting

people who don't, and I'll just say this: *never* get between these people when drink has been taken.").

6

Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.02(6), 1977 TEX. GEN. LAWS 2039, 2040 (repealed 2003)); *Marks*, 319 S.W.3d at 663 (same). In 2003, when the Legislature codified the TMLA and amended the definition of a health care liability claim, it noted that the State was "facing another 'medical malpractice insurance crisis' and a corresponding 'inordinate[]' increase in the frequency of [health care liability claims] filed since 1995." *West Oaks*, 371 S.W.3d at 177 (quoting Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(a), 2003 TEX. GEN. LAWS 847, 884); *Marks*, 319 S.W.3d at 663 (same). The purpose of both the original statute and the 2003 amendments was to address crises affecting "medical and health care" and "medical malpractice insurance."

As Justice Medina observed in *Marks*, "given the object of the statute and the Legislature's express concern, it is apparent that the Legislature did not intend for standards of safety to extend to every negligent injury that might befall a patient." *Marks*, 319 S.W.3d at 664. Construing section 74.001(a)(13) to encompass all "safety" claims takes the statute far beyond the Legislature's stated purpose. For example, if a hospital visitor who is assaulted at night in the hospital's parking lot sues the hospital alleging that the hospital failed to provide adequate lighting and security, the visitor's claim would be a health care liability claim under the Court's holding *West Oaks*. Unless I assume that the Legislature intentionally avoids the use of the Oxford comma, I am aware of nothing in the TMLA that indicates their intent to accomplish something so far outside the stated purpose of the statute and its amendments. I cannot attribute such great weight to such an assumption.

So far, the Court's disagreements over the construction of the statute have been of little consequence, because each time we have held that a claim satisfied the "safety" component we have also held the claim satisfied the "health care" component or that the safety standards were directly

7

related to health care. *See West Oaks*, 371 S.W.3d at 181 (holding that hospital caregiver injured by mental health patient under his supervision asserted health care liability claims "based on claimed departures from accepted standards of health care"); *Marks*, 319 S.W.3d at 666 (holding that claim of recovering surgical patient injured when hospital bed footboard collapsed was a health care liability claim "[b]ecause the provision of a safe hospital bed was an inseparable part of the health care services provided during [the patient's] convalescence from back surgery"); *Diversicare*, 185 S.W.3d at 849 (concluding that claims against nursing home for failing to prevent sexual assault by another patient were "claims for breaches of the standard of care for a health care provider because the supervision of Rubio and the patient who assaulted her and the protection of Rubio are inseparable from the health care and nursing services provided to her").

Here too, Palit alleges that Mission Vista departed from safety standards that, in my view, are "directly related to health care," so these claims are health care liability claims under section 74.001(a)(13).[4] Thus, although I disagree with the Court's construction of the statute, I concur in the Court's judgment. In light of the difficulty that the Court has had in reaching a consensus about the meaning of this statute, and because I anticipate that the Court will one day be required to address claims based on safety standards that are not directly related to health care, I write separately to express and explain my disagreement with the Court's construction.

---

[4] As the Court agrees, Palit's claims "arise from an incident similar to that in *West Oaks*," *ante* at ___, and "[a]s in *West Oaks*, [Palit's] allegations fall under both the safety and health care components of [a health care liability claim]." *Ante* at ___. As to the safety claims issue, this case is essentially identical to *West Oaks*, and it was as unnecessary to address the issue in *West Oaks* as it is to do so here; or, alternatively, it is as necessary to do so here as it was to do so there. If addressing the issue here constitutes an "advisory" opinion, then the Court's addressing of the issue in *West Oaks* was also an advisory opinion and the issue remains unresolved, which is exactly why I have addressed it here.

8

_____
Jeffrey S. Boyd
Justice

**OPINION DELIVERED:**  August 23, 2013