**Affirmed and Memorandum Opinion filed August 1, 2017.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

### NO. 14-16-00567-CV

**JOHN D. GUIMOND AND MARY GRACE GUIMOND, INDIVIDUALLY AND AS NEXT FRIENDS OF NICOLAS R. GUIMOND, A MINOR, Appellants**

**V.**

**INTEGRATED GENETICS LAB CORP SPECIALTY TESTING GROUP, LABORATORY CORPORATION OF AMERICA, MEMORIAL HERMANN HEALTHCARE SYSTEM, AND MEMORIAL HERMANN HEALTH SYSTEM d/b/a MEMORIAL HERMANN NORTHWEST HOSPITAL, Appellees**

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-30393**

## M E M O R A N D U M   O P I N I O N

When John and Mary Grace Guimond's son Nicolas was born, they were told that cytogenetic testing showed the child was normal. Eight months later, the

hospital that ordered the test and the laboratory that performed it either reviewed the original test results or retested the original sample and informed the Guimonds that their son has Down Syndrome. The Guimonds, individually and as Nicolas's next friends, sued the hospital and the laboratory, but the trial court granted each defendant's motion to dismiss on the ground that the Guimonds failed to file an expert report as required to maintain a health care liability claim.

In this appeal, the Guimonds argue that the trial court erred in dismissing the case because they present no health care liability claims, and thus, no expert report is required. All of the Guimonds' claims, however, can be reduced to an allegation that Nicolas was harmed by the defendant health care providers' failure to properly perform, interpret, or report the results of diagnostic testing. Under the unambiguous language of the relevant statutes, and as a matter of law, this is a health care liability claim. Because the Guimonds failed to file an expert report as required, we affirm the trial court's orders dismissing their claims and requiring them to pay the defendants' attorney's fees.

## I. BACKGROUND[1]

On the day their son Nicolas was born at Memorial Hermann Northwest Hospital ("Memorial Hermann"),[2] Memorial Hermann's doctors and other authorized personnel asked for the Guimonds' consent to perform cytogenetic

---

[1] Unless otherwise noted, the information in this section is drawn from the factual allegations of the Guimonds' pleadings and from the allegations in, and evidence attached to, their response to the motions to dismiss their claims.

[2] In their live pleadings, the plaintiffs listed three "Memorial Hermann" defendants— Memorial Hermann Health System, Memorial Hermann Healthcare System, and Memorial Hermann Northwest Hospital—but in fact, there is only one "Memorial Hermann" defendant. In its answer, Memorial Hermann identified itself as "Memorial Hermann Health System d/b/a Memorial Hermann Northwest Hospital (incorrectly named as Memorial Hermann Healthcare System)."

testing on Nicolas to determine if he has Down Syndrome. The Guimonds agreed and paid for the testing. By agreement with Memorial Hermann, the test was performed by Laboratory Corporation of America Holdings ("LabCorp").[3] LabCorp reported to Memorial Hermann that Nicolas had "normal male karyotype,"[4] and Memorial Hermann employee Dr. Elizabeth Eason informed the Guimonds that the test showed Nicolas to be "normal."

In the eight months after Nicolas's birth, the Guimonds became concerned about his development. After other medical providers examined Nicolas and suggested that he might have Down Syndrome, the Guimonds returned to Memorial Hermann and again contracted for Memorial Hermann and LabCorp to perform cytogenetic testing. According to the Guimonds, LabCorp did not test an additional sample of Nicolas's blood but instead either retested the original sample or reviewed its original results.[5] LabCorp concluded that Nicolas does have Down Syndrome. LabCorp and Memorial Hermann communicated the amended test report to the Guimonds.

The Guimonds sued Memorial Hermann, LabCorp, Dr. Eason, and three other doctors for fraud, breach of contract, misrepresentation, violations of the Texas Deceptive Trade Practices–Consumer Protection Act, negligence, and gross negligence. In their original petition, they specifically pleaded that the defendants

---

[3] The single laboratory named in the suit is referred to in the plaintiffs' pleadings both as Integrated Genetics Lab Corp Specialty Testing Group and as Laboratory Corporation of America. LabCorp identifies itself as "Laboratory Corporation of America Holdings ('LabCorp,' who was incorrectly sued as Integrated Genetics Lab Corp Specialty Testing Group)."

[4] "Karyotype" means "the number and visual appearance of the chromosomes in the cell nuclei of an organism or species." NEW OXFORD AMERICAN DICTIONARY 950 (Angus Stevenson & Christine Lindberg eds., 3d ed. 2010).

[5] LabCorp's amended report of the test results lists a different specimen number, but gives the same date of specimen collection stated in the original report.

"committed medical malpractice in their conduct as set forth above and in this petition." After Dr. Eason moved for dismissal of the Guimonds' claims with prejudice for failure to serve the statutorily required expert report necessary to maintain a health care liability claim, the Guimonds nonsuited their claims against all four doctors and amended their petition to remove the reference to medical malpractice. Their amended petition also identified the harm alleged from the erroneous test results: "All research indicates that early intervention with specific therapy for Down Syndrome children is crucial . . . . As a result of the breaches by [Memorial Hermann and LabCorp], Nicolas, John and Mary Grace lost substantial and precious time before being able to make intervention for therapy for Nicolas."

Memorial Hermann and LabCorp filed their own motions to dismiss for failure to serve expert reports. In response, the Guimonds asserted that Memorial Hermann was the intermediary between themselves and LabCorp, and that LabCorp does not provide medical or health care services. In support of their position, the Guimonds emphasized the statement on LabCorp's website, "Whether the needs are large or small, routine or complex, physicians and patients can depend on us for access to a full range of the highest quality diagnostic testing."

The trial court granted both motions to dismiss.

## II. ISSUES PRESENTED

In seven issues, the Guimonds argue that the trial court erred in granting Memorial Hermann's and LabCorp's motions to dismiss. The issues are different phrasings of the same argument, differing only in whether the issue challenges the order granting Memorial Hermann's motion to dismiss, the order granting LabCorp's motion to dismiss, or both. Because the Guimonds did not separately brief any issue, we likewise address all of their issues as a single unit.

4

## III. THE NATURE OF THE GUIMONDS' CLAIM

Under the Texas Medical Liability Act,[6] a claimant asserting a health care liability claim must serve each defendant with one or more expert reports within 120 days after the defendant answers the suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017). An expert report summarizes the expert's opinion "regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). If the claimant serves no expert report on a defendant physician or health care provider within the time allowed, then that defendant can move to dismiss the claim with prejudice. *Id.* § 74.351(b). The trial court must grant the motion and must award that defendant reasonable attorney's fees and costs of court. *Id.*

The Guimonds argue that the trial court erred in dismissing their case against Memorial Hermann and LabCorp because their claims are not health care liability claims, and thus, the Act does not apply.

Whether a claim is encompassed within the Texas Medical Liability Act is a matter of statutory construction. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). The construction of a statute is a question of law which we review de novo. *See id.* And here, the statute itself defines a "health care liability claim":

> "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a

---

[6] TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.507 (West 2017).

claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Thus, a claimant asserts a health care liability claim if (a) the defendant is a "health care provider" or physician; (b) the claimant's claim concerns "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care"; and (c) the conduct complained of proximately caused injury to the claimant. *See Tex. W. Oaks Hosp.*, 371 S.W.3d at 179–80.

## A. Memorial Hermann and LabCorp Are Health Care Providers.

A "health care provider" includes an entity that is a "health care institution." *See id.* § 74.001(a)(12)(A)(vii). A "health care institution" is defined to include "a hospital." *See id.* § 74.001(a)(11)(G). All parties agree that Memorial Hermann is a hospital; thus, Memorial Hermann is a "health care provider."

The term "health care provider" is not limited to health care institutions such as hospitals, but also includes an "independent contractor, or agent of a health care provider or physician acting in the course and scope of the . . . contractual relationship." *See id.* § 74.001(a)(12)(B)(ii). The undisputed facts establish that LabCorp fits within this definition. The Guimonds pleaded that personnel at Memorial Hermann asked if the Guimonds wanted cytogenetic testing performed on their newborn child, and when the Guimonds consented, LabCorp performed the test "by agreement with" Memorial Hermann. In response to the motions to dismiss, the Guimonds produced LabCorp's two reports on the results of the test, and both show that the test was ordered by a physician identified as Dr. Downey. In their appellate brief, the Guimonds similarly state that the hospital "arranged" the test, and that the "testing and analysis was performed by [LabCorp] through Memorial Hermann."

6

Because LabCorp acted as Memorial Hermann's independent contractor or agent in performing the test that was ordered by a physician, LabCorp is a "health care provider."

We conclude that the first element of a health care liability claim is satisfied, that is, that the defendants Memorial Hermann and LabCorp are health care providers. We turn now to the second element, which concerns whether these defendants' alleged acts or omissions are encompassed by the Texas Medical Liability Act.

**B.    The Guimonds' Cause of Action Is for Memorial Hermann's and LabCorp's Claimed Departures from Accepted Standards of Medical Care, or Health Care, or Professional or Administrative Services Directly Related to Health Care.**

To determine if a claimant's cause of action is for a "claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care,"[7] we look to "the facts underlying the claim, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted." *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012). We begin by identifying the kinds of acts and omissions that are encompassed by the terms "health care" and "medical care." We will then be able to compare the statutory definition with the Guimonds' description of Memorial Hermann's and LabCorp's allegedly improper conduct.

"Health care" is defined to include "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's *medical care*, treatment, or confinement." *Id.* § 74.001(a)(10) (emphasis added). "'Medical care' means any

---

[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13).

7

act defined as *practicing medicine* under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement." *Id.* § 74.001(a)(19) (emphasis added). "Practicing medicine" is defined to include "the diagnosis . . . [of] a mental or physical disease or disorder or a physical deformity . . . by any system or method" by a person who either "publicly professes to be a physician or surgeon" or "directly or indirectly charges money or other compensation for those services." TEX. OCC. CODE ANN. § 151.002(a)(13) (West Supp. 2016). Putting all of these definitions together, "health care" includes acts that were, or that should have been, performed or furnished for or to the patient by a health care provider during the diagnosis, by any system or method, of a physical disorder.[8]

The Guimonds' allegations fall within this definition. The Guimonds allege that their child was harmed by Memorial Hermann's and LabCorp's failure to properly perform, interpret, and report the results of diagnostic testing. First, diagnostic testing—which includes performing the test, interpreting the outcome, and reporting the result—falls within the definition of "health care." Performing the test and interpreting and communicating the result are acts that were, or should have been, "performed" by a "health care provider for . . . a patient during the patient's medical care."[9] The acts alleged were performed "during the patient's medical care," because (1) the Guimonds admit that "doctors" approached them and asked if they wanted cytogenetic testing performed on Nicolas; (2) the tests were ordered by Dr. Downey, as is shown by the designation of this individual as the "Ordering

---

[8] This is not an exhaustive definition; we address only the definitions applicable to the allegations and the evidence in this case.

[9] Because Nicolas is a minor, the report was furnished to his parents on his behalf.

Physician" on both the original and the amended reports of the results of Nicolas's blood test; (3) the Guimonds allege that they paid for the testing; (4) they allege that Dr. Eason reported the initial test results; and (5) they admit that at least one purpose of the test was "to determine if Nicolas had Down Syndrome, or any other abnormality." Thus, the testing was performed for direct or indirect compensation, and was part of Dr. Downey's and Dr. Eason's practice of medicine—specifically, the "the diagnosis . . . [of] a . . . physical . . . disorder . . . by any system or method." The comparison of the statutory definitions with the Guimonds' allegations establishes that the Guimonds are asserting health care liability claims against health care providers Memorial Hermann and LabCorp.

To avoid this conclusion, the Guimonds characterize their allegations as concerning "scientific" testing, even though they also continue to emphasize that LabCorp holds itself out as providing "diagnostic testing." For reasons that are unclear, the Guimonds conclude from this that "[i]t is obvious that LabCorp **DOES NOT WANT** to provide healthcare or medical services. Logically this takes them out of the health care liability arena, likely their specific intention." We do not see the logic in this argument, which cannot be reconciled with the statutory definitions we have just discussed. Medicine is a science,[10] and diagnostic testing is a kind of scientific testing encompassed by the practice of medicine.

The Guimonds further state that their claims are not health care liability claims because the claims "require[] no expert opinions or proof of negligence, wrongdoing, or mistake" because "LabCorp, by its own reported matters (essentially admissions) made an error." Again, the Guimonds' reasoning is unclear. If this

---

[10] *See also* NEW OXFORD AMERICAN DICTIONARY 1087 (Angus Stevenson & Christine Lindberg Eds., 3d ed. 2010) (defining "medicine" to include "the science or practice of the diagnosis, treatment, and prevention of disease").

9

argument is intended to invoke the doctrine of *res ipsa loquitur*, the argument fails because "[*r*]*es ipsa loquitur* is simply a rule of evidence by which negligence may be inferred by the jury; it is not a separate cause of action from negligence." *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990). Moreover, even in health care liability claims to which *res ipsa loquitur* arguably applies, the claimant still must comply with the statutory expert-report requirement. *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam) (addressing the predecessor statute). If the Guimonds instead intended to suggest that LabCorp's reports are party admissions or statements against interest, the argument fails for the same reason: these are rules of evidence, not exceptions to the Texas Medical Liability Act. *See* TEX. R. EVID. 801(e)(2) (identifying the characteristics under which an opposing party's statement is not hearsay); TEX. R. EVID. 803(24) (providing that a statement against interest is "not excluded by the rule against hearsay").

We conclude that the Guimonds' pleading satisfies the second element of a health care liability claim. This leaves only the third element, that is, whether the Guimonds contend that Memorial Hermann's and LabCorp's conduct proximately caused injury to Nicolas (and the derivative mental, emotional, and financial harm the Guimonds allegedly have or will sustain as Nicolas's parents).

## C. The Guimonds Allege that Memorial Hermann's and LabCorp's Breaches of the Standard of Care Proximately Caused the Claimed Harm.

The Guimonds' allegations concerning proximate cause are straightforward. They pleaded that Memorial Hermann and LabCorp "had duties . . . to provide the services and reporting, as represented, correctly and accurately." The Guimonds further pleaded that Memorial Hermann and LabCorp "failed to adhere to those duties and in fact breached those duties by failing to adhere to the standard of conduct reasonably anticipated and relied upon by the Plaintiffs. That breach of duty

was a direct and proximate cause of the damages sustained by the Plaintiffs, inclusive." Thus, the third element of a health care liability claim is satisfied.

We overrule each of the issues presented.[11]

## IV. CONCLUSION

Because the Guimonds have alleged only health care liability claims against Memorial Hermann and LabCorp, the trial court properly granted the defendants' motion to dismiss the claims against them with prejudice. We overrule each of the issues presented, and we affirm the trial court's judgment.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Busby, and Jewell.

---

[11] In their seventh issue, the Guimonds ask "whether the district court, absent trial, summary judgment evidence, or other evidentiary evidence, could properly determine and have jurisdiction and determine that appellants' claims were founded on the provision of medical care or medical services, contrary to the appellants' pleadings." The Guimonds did not brief this issue; thus, to the extent that the issue embraces more than a jurisdictional complaint the issue is waived. *See* TEX. R. APP. P. 38.1(i). A lack of subject-matter jurisdiction, however, cannot be waived. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). Briefly then, Texas district courts are courts of general jurisdiction. *See Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 753 (Tex. 2017). We presume that a court of general jurisdiction has subject-matter jurisdiction "unless a showing can be made to the contrary." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). While there are statutory exceptions, we are aware of none that apply here, nor do the Guimonds argue to the contrary. The Guimonds alleged that their damages exceeded the trial court's minimum jurisdictional limits, and that allegation is unchallenged. We therefore overrule the challenge to the trial court's jurisdiction.

11